# EXHIBIT 2

THIS EMPLOYMENT AGREEMENT ("Agreement"), effective this 13th day of November, 2013 ("Effective Date"), is entered into by and between David Chadwick Dillon ("Employee"), and Centrifugal Services, LLC, an Illinois limited liability company (the "Company").

WHEREAS, Employee desires to provide the Company and certain of its affiliates with his services, and the Company desires to employ Employee on the terms and subject to the conditions set forth herein.

NOW, THEREFORE, in consideration of the mutual representations, warranties, covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, agree as follows:

*Employment*

Subject to the terms and conditions of this Agreement, the Company agrees to employ Employee, and Employee agrees to be employed by the Company.

*Position*

Employee will be employed, in accordance with the terms and conditions set forth herein, by the Company, on a full-time basis as the President of the Industrial Process Equipment division, and in such capacity Employee agrees to perform all such duties as are required by Employee's position and such other duties on behalf of the Company and its affiliates as may reasonably be assigned to Employee from time to time by the President of the Company or the Board of Managers of the Company as well as the boards of the Company's parent entities (collectively, the "Board").

*Employment and Duties*

Term. The initial term of employment of Employee hereunder (the "Initial Term") will commence as of the date hereof and continue for a period of twenty-four (24) months unless earlier terminated, or extended pursuant to a written extension amending this Agreement or such other agreement signed by both parties hereto. The Initial Term, together with any renewal term or terms, if applicable, will be defined as the "Term" of the Agreement. In the event that Employee remains employed by the Company after the expiration of the Initial Term, in the absence of a written extension, Employee will be considered an employee at will.

Duties. Employee agrees that, while employed by the Company, Employee will devote all of his business time and his best efforts, judgment, skill and knowledge to the advancement of the business and interests of the Company and its affiliates and to the discharge of his duties and responsibilities for the Company and its affiliates. So long as Employee is employed by the Company, Employee will not, without the prior written consent of the Board, participate in any seminars, speaking engagements or trade association or consultation groups that may relate to the Company's business or industry other than in connection with Company business.

*Salary*

During the Initial Term of Employee's employment hereunder, the Company will pay Employee a base salary at the rate of $110,000 per year, subject to applicable withholding, payable in accordance with the regular payroll practices of the Company and subject to increase from time to time as determined by the Board in its discretion ("Salary"). After expiration of the Initial Term, if Employee remains employed by the Company his salary and other compensation will be determined in the discretion of the Company.

*Bonuses*

During the Initial Term, Employee will be eligible to participate in the Company's Annual Incentive Compensation Program. Under this program, during Employee's employment with the Company, Employee will be eligible for an annual target incentive bonus of forty percent (40%) of his base salary based on the achievement of financial and strategic objectives. The actual bonus award for any year will be determined by the Board, based on Employee's performance and that of the Company against goals established annually by the Board in its discretion. Any bonus will be payable during the calendar year that begins immediately following the calendar year for which the bonus was earned, as soon as reasonably practicable following the completion of the Company's audit for the calendar year for which the bonus was earned.

*Benefits*

During Employee's employment with the Company, Employee will be entitled to participate in medical and dental benefit plans with terms comparable to those available to other similarly situated employees. Participation in benefit plans will be governed by and subject to the terms, conditions and overall administration of such plans.

*Vacation*

During Employee's employment with the Company, Employee will be entitled to paid vacation of three (3) weeks per calendar year.

*Reimbursement of Expenses*

During Employee's employment with the Company, the Company will reimburse Employee for all reasonable travel and other expenses incurred in performing Employee's obligations under this letter agreement. Any such reimbursement will be made on or before the last day of the calendar year following the calendar year in which such business expenses were incurred. No reimbursement of expenses or incurrence of expenses eligible for reimbursement in any calendar year will in any way affect Employee's right to reimbursement in any other calendar year, and Employee's right to reimbursement will not be subject to liquidation in exchange for any other benefit.

*Confidential Information, Non-Competition; Non-Solicitation*

By Employee's acceptance of this agreement, Employee agrees to abide by the "Confidential Information, Non-Competition and Non-Solicitation Terms" attached hereto as Exhibit A, which are incorporated herein by reference.

*Termination*

The Company may terminate Employee's employment hereunder at any time (whether during the Initial Term or thereafter) with or without Cause (as defined below) upon written notice; provided, however, that if Employee's employment is terminated by the Company without Cause (as defined below), Employee will receive Salary continuation for (the lesser in duration of) (i) twelve (12) months, or (ii) until the end of the Initial Term, in either case, payable in equal installments in accordance with the Company's normal payroll practices as in effect on the date of termination, but in no event less frequently than monthly, subject to Employee's execution and non-revocation (and the expiration of any period of revocation) of, and continued compliance with, a severance agreement and release of claims ("Release") in form and substance satisfactory to the Company within sixty (60) days of Employee's termination of employment and Employee's continuing to abide by the attached "Confidential Information, Non-Competition and Non-Solicitation Terms." Notwithstanding the foregoing, if Employee secures new employment prior to the end of the Salary continuation described above, Employee will inform the Company and Salary continuation will terminate upon the commencement of such new employment.

"Cause" will mean (i) the willful failure to perform Employee's duties with the Company, (ii) the willful engaging in misconduct materially injurious to the Company, (iii) Employee's commission of a crime involving any financial impropriety or which would materially interfere with Employee's ability to perform Employee's services for the Company or otherwise be injurious to the Company; or (iv) Employee's material breach of this letter agreement (including, without limitation, the attached "Confidential Information, Non-Competition and Non-Solicitation Terms", the Company's Code of Conduct and Ethics or any policy of the Company.

If Employee's employment is terminated by Employee, by the Company with Cause or due to Employee's disability or death, the Company's obligations hereunder will immediately cease, except that Employee or Employee's estate will be entitled to receive accrued salary and benefits through the date of termination. Employee will be considered physically or mentally disabled if Employee is unable, as determined by a physician selected by the Company, to perform Employee's job functions for a period aggregating ninety (90) days during any twelve-month (12) period.

Once the Release is executed and delivered, then the following will apply to any required Salary continuation payments:

(A)  Any such cash payment to be provided that is not nonqualified deferred compensation subject to Section 409A of the Internal Revenue Code of 1986, as may be amended, and the regulations and guidance issued thereunder ("Section 409A"), as determined by the Company in its

discretion, will commence or be made upon the first scheduled payment date immediately after the date the Release is executed and no longer subject to revocation (the "Release Effective Date"); and

(B)   Any such cash payment to be provided that is nonqualified deferred compensation subject to Section 409A, as determined by the Company in its sole discretion, will commence or be made upon the 60th day following Employee's termination of employment.

The first cash payment made under the Salary continuation provisions hereunder, if any, will include payment of all amounts that otherwise would have been due prior to the Release Effective Date hereunder had such payments commenced immediately upon Employee's termination of employment, and any payments made thereafter will continue as otherwise provided herein.

Except for any right Employee may have under COBRA to continue participation in the applicable Company plans at Employee's cost, benefits will terminate in accordance with the terms of the applicable plans based on the date of termination of Employee's employment, without regard to any continuation of Salary or other payment to Employee following termination.

Upon any termination of Employee's employment, Employee will automatically be deemed to have resigned, from all positions with the Company and its affiliates, including any manager or board position.

### *U.S. Income Tax Rule Compliance*

All payments under this letter agreement are stated in gross amounts and will be subject to customary withholding and other amounts required by law to be withheld.

Notwithstanding any other payment schedule provided herein if Employee is identified on the date of termination as a "specified employee" within the meaning of Section 409A(a)(2)(B), then, any payment that is considered nonqualified deferred compensation subject to Section 409A, as determined by the Company in its discretion, and payable on account of a "separation from service," will be made on the date that is the earlier of (A) the expiration of the six-month period beginning on the date of Employee's "separation from service", and (B) Employee's death (the "Delay Period") to the extent required under Section 409A.  On expiration of the Delay Period, all payments delayed pursuant to this paragraph will be paid to Employee in a lump sum, and all remaining payments due under this Agreement will be paid or provided in accordance with the normal payment dates specified for them.

Employee's right to receive any installment payment pursuant to this Agreement will be treated as a right to receive a series of separate and distinct payments.  Whenever a payment under this Agreement specifies a payment period with reference to a number of days, the actual date of payment within the specified period will be within the sole discretion of the Company.

In no event will any payment under this Agreement that constitutes "Non-Qualified Deferred Compensation" for purposes of Section 409A be subject to offset by any other agreement unless otherwise permitted by Section 409A. In no event whatsoever will the Company be liable for any additional tax, interest or penalty that may be imposed on Employee by Section 409A or damages for failing to comply with Section 409A.

### *General*

This Agreement and the legal relations thus created between the parties will be governed by and construed under and in accordance with the internal laws, but not the laws of conflicts, of the State of Delaware. Except for claims for injunctive relief by the Company for breach of any of the "Confidential Information, Non-Competition and Non-Solicitation Terms" (which claim for injunctive relief may be brought in any court of competent jurisdiction), any judicial proceeding brought with respect to this Agreement must be brought in the federal courts in the State of Delaware, and, by execution and delivery of this Agreement, each party hereto (a) accepts, generally and unconditionally, the exclusive jurisdiction of such courts and any related appellate court, and irrevocably agrees to be bound by any judgment rendered thereby in connection with this Agreement and (b) irrevocably waives any objection he or it may now or hereafter have as to the venue of any such suit, action or proceeding brought in such a court or that such court is an inconvenient forum. Each party waives a right to a jury trial. No amendment, modification, or waiver of this letter agreement will be effective unless set forth in a written instrument executed by the Company and Employee; <u>provided</u> that the Company may (but will not be obligated to), without Employee's consent, amend this letter agreement and the timing of payments hereunder to comply with Section 409A of the Internal Revenue Code of 1986, the rules and regulations promulgated pursuant thereto and the written guidance of the IRS and Department of Treasury with respect thereto. Employee may not assign Employee's rights or obligations hereunder without the prior written consent of the Company.

### *Waiver*

Failure to insist upon strict compliance with any of the terms, covenants, or conditions hereof will not be deemed a waiver of such term, covenant, or condition, nor will any waiver or relinquishment of, or failure to insist upon strict compliance with, any right or power hereunder at any one or more times be deemed a waiver or relinquishment of such right or power at any other time or times.

### *Severability*

If for any reason any term or provision containing a restriction set forth herein is held to be for a length of time which is unreasonable or in other way is construed to be too broad or to any extent invalid, such term or provision will not be determined to be null, void and of no effect, but to the extent the same is or would be valid or enforceable under applicable law, any court will construe and reform this Agreement to provide for a restriction having the maximum time period and other provisions as will be valid and enforceable under applicable law. If, notwithstanding the previous sentence, any term or provision of this Agreement is held to be invalid or unenforceable, all other valid terms and provisions hereof

will remain in full force and effect, and all of the terms and provisions of this Agreement will be deemed to be severable in nature.

### *Entire Agreement; Effect on Certain Prior Agreements*

This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes any prior agreements between them with respect to the subject matter hereof, including all prior employment, retention, severance or related agreements between Employee and the Company or any successor, predecessor or affiliate. Without limiting the generality of the foregoing, the obligations under this Agreement with respect to any termination of employment of Employee, for whatever reason, supersede any severance or related obligations of the Company or any of its successors, predecessors or affiliates in any plan of the Company or any of its successors, predecessors or affiliates or any agreement between Employee and the Company or any of its successors, predecessors or affiliates.

### *Counterparts*

This Agreement may be executed in several counterparts, each of which will be deemed to be an original but all of which together will constitute one and the same instrument.

*[The remainder of this page is intentionally left blank.]*

IN WITNESS WHEREOF, the Company has caused this Agreement to be executed by its duly authorized officer, and Employee has hereunto signed this Agreement, as of the date first above written.

**CENTRIFUGAL SERVICES, LLC**

By: _____
Name: David Hall
Its:    Senior Vice President

**EMPLOYEE**

_____
David Chadwick Dillon

IN WITNESS WHEREOF, the Company has caused this Agreement to be executed by its duly authorized officer, and Employee has hereunto signed this Agreement, as of the date first above written.

**CENTRIFUGAL SERVICES, LLC**


By: _____
Name: David Hall
Its:    Senior Vice President


**EMPLOYEE**

*[signature]*
David Chadwick Dillon

## Exhibit A

### *Confidential Information, Non-Competition and Non-Solicitation Terms*

(a) <u>Confidential Information</u>. Employee acknowledges that in the course of Employee's employment with the Company, Employee will occupy a position of trust and confidence. Employee will not, except in the course of the good faith performance of Employee's duties to the Company and its affiliates or as required by applicable law, without limitation in time and whether directly or indirectly, disclose to any person or entity, or use, any Confidential Information. "<u>Confidential Information</u>" will mean information about the Company, its affiliates, or their respective clients, customers or business relations, that was learned by Employee in the course of Employee's employment by or services for the Company, its affiliates or otherwise, including (without limitation) any proprietary knowledge, trade secrets, data, formulae, information and client and customer lists and all papers, resumes, and records (including, without limitation, computer records) containing such Confidential Information, but Confidential Information excludes information that Employee can demonstrate (i) is in the public domain through no act or omission of Employee in violation of any agreement that Employee is party to with the Company or any of its affiliates or any policy of the Company or any of its affiliates or (ii) has become available to Employee on a non-confidential basis from a source other than the Company or its affiliates without breach of such source's confidentiality or non-disclosure obligations to the Company or any affiliate. Employee agrees to deliver or return to the Company, at the Company's request at any time or upon termination or expiration of Employee's employment or as soon thereafter as possible, (A) all documents, computers, computer tapes and disks, records, lists, data, drawings, prints, notes, written information, keys and other personal property furnished by the Company or its affiliates, or prepared by Employee during the term of Employee's employment by the Company or its affiliates, and (B) all notebooks and other data relating to research or experiments or other work conducted by Employee in the scope of employment, and all copies thereof.

(b) <u>Non-Competition</u>. During the period of Employee's employment by the Company and continuing until the first anniversary of the date that Employee ceases to be employed with the Company for any reason (the "<u>Applicable Period</u>"), Employee will not, directly or indirectly, without the prior written consent of the Company, on behalf of any individual or entity other than the Company and its affiliates, perform services in any capacity (whether as an owner, employee, partner, independent contractor or otherwise, whether with or without compensation) in all or any portion of any business that the Company or any of its affiliates conducts or is developing as of the date of such termination (each such competitor a "<u>Competitor of the Company</u>"); provided, however, that the "beneficial ownership" by Employee, either individually or as a member of a "group" as such terms are used in Rule 13d of the General Rules and Regulations under the Exchange Act, of not more than five percent (5%) of the voting stock of any publicly held corporation will not alone constitute a violation of this paragraph. Employee and the Company acknowledge and agree that the business of the Company extends throughout the world, and that the terms of the non-competition agreement set forth herein will apply (i) on a nationwide basis throughout the United States and (ii) and each other country in which the Company has operations or does business.

(c)     Non-Solicitation of Customers and Suppliers. During the Applicable Period, Employee will not, directly or indirectly, influence or attempt to influence customers or suppliers of the Company or any of its affiliates to divert any of their business to any Competitor of the Company or otherwise away from the Company or its affiliates.

(d)     Non-Solicitation of Employees. Employee recognizes that Employee possesses and will possess Confidential Information about other employees of the Company and its affiliates, relating to their education, experience, skills, abilities, compensation and benefits, and inter-personal relationships with customers of the Company and its affiliates. Employee recognizes that the information Employee possesses and will possess about these other employees is not and will not be generally known, is of substantial value to the Company and/or its affiliates in developing their business and in securing and retaining customers, and has been and will be acquired by Employee because of Employee's business position with the Company and its affiliates. Employee agrees that, during the Applicable Period, Employee will not, directly or indirectly, solicit, recruit, induce, or encourage or attempt to solicit, recruit, induce, or encourage any employee of the Company or its affiliates (i) for the purpose of being employed by him or by any Competitor of the Company on whose behalf Employee is acting as an agent, representative, employee or other capacity or (ii) to terminate Employee's or his or her employment or any other relationship with the Company or its affiliates. Employee also agrees that Employee will not convey any such Confidential Information or trade secrets about other employees of the Company or its affiliates to any other person or entity.

(e)     Remedies. It is expressly agreed that the Company, including its affiliates, will or would suffer irreparable injury if Employee were to violate any of these Confidential Information, Non-Competition and Non-Solicitation Terms and that the Company and/or any of its affiliates will by reason of such violation be entitled to injunctive relief, without the requirement of posting of a bond, in a court of competent jurisdiction and Employee further consents and stipulates to the entry of such injunctive relief in such a court prohibiting Employee from so violating the terms of this agreement. In addition, in the event of a breach, the Company will be entitled to receive from Employee an amount equal to its out-of-pocket legal expenses in enforcing these commitments. Each of the Company's current, former and future affiliates are express third-party beneficiaries of this agreement.

(f)     Survival of Provisions. The obligations contained in these Confidential Information, Non-Competition and Non-Solicitation Terms will survive the termination or expiration of Employee's employment with the Company and will be fully enforceable thereafter. Employee's obligations under these Confidential Information, Non-Competition and Non-Solicitation Terms will be tolled during any period of non-compliance.

(g)     Blue Pencil. If, at the time of enforcement of these Confidential Information, Non-Competition and Non-Solicitation Terms, a court will hold that the duration, scope or area restrictions stated herein are unreasonable under circumstances then existing, Employee and the Company agree that the maximum duration, scope or area reasonable under such circumstances will be substituted for the stated duration, scope or area and that the court will be allowed to revise the restrictions contained herein to cover the maximum period, scope and area permitted by law. Employee agrees that the restrictions contained in these Confidential Information, Non-Competition and Non-Solicitation Terms

are reasonable (including, without limitation, with respect to duration, area and scope), necessary to protect the goodwill and Confidential Information of the Company in light of Employee's position with and responsibilities for the Company and its affiliates and do not prevent Employee from earning a livelihood and that the potential harm to the Company and its affiliates of the non-enforcement of these Confidential Information, Non-Competition and Non-Solicitation Terms outweighs any harm to Employee of enforcement of these Confidential Information, Non-Competition and Non-Solicitation Terms, whether by injunction or otherwise.

      (h)    <u>Defamation</u>. During the Applicable Period, Employee agrees not to make any negative or damaging statement (either orally or in writing) that is intended to or could reasonably be expected to disparage, criticize or otherwise put in a negative light the Company or its affiliates or any of their respective products, services, direct or indirect equityholders, directors, officers or employees.

      (i)    <u>Cooperation</u>. Employee agrees that, while employed, for one (1) year thereafter and, if longer, during the pendancy of any litigation or other proceeding, (i) Employee will not communicate with anyone (other than Employee's attorneys) with respect to any matter relating to a pending or potential litigation, or regulatory or administrative proceeding involving the Company or any of its affiliates, other than any litigation or other proceeding in which Employee is a party-in-opposition, without giving prior notice to the Company, and (ii) in the event that any other party attempts to obtain information or documents from Employee (other than in connection with any litigation or other proceeding in which Employee is a party-in-opposition) with respect to matters related to such litigation or other proceeding, Employee will promptly so notify the Company's counsel. Employee agrees to cooperate, in a reasonable and appropriate manner, with the Company and its attorneys, both during and after the termination of Employee's employment, in connection with any litigation or other proceeding arising out of or relating to matters in which Employee was involved prior to the termination of Employee's employment to the extent the Company pays all Company-approved expenses Employee incurs in connection with such cooperation.

      (j)    <u>Business Opportunities</u>. Employee agrees that, for the duration of Employee's employment with the Company or its affiliates and as part of Employee's duties as an employee of the Company or its affiliates, Employee will submit to the Board all business, commercial and investment opportunities presented to Employee or of which Employee becomes aware which relate to the business of the Company and its affiliates, and unless approved by the Board in writing, Employee will not pursue, directly or indirectly, any such opportunities on Employee's own behalf.

      (k)    <u>Additional Obligations</u>. Employee understands and agrees that the restrictive covenants set forth in this Exhibit A are in addition to, and not in lieu of, any non-competition, non-solicitation or other similar obligations contained in any other agreement between Employee and the Company or any of its affiliates (each, an "<u>Additional Obligation</u>"). Employee hereby acknowledges, reaffirms and agrees that Employee is and will continue to be bound by the terms and conditions of such Additional Obligations.

7427666