IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

ELGIN SEPARATION SOLUTIONS, LLC, et al.,

        Plaintiffs,

v.                                       CIVIL ACTION NO. 2:23-cv-00440

DAVID CHADWICK DILLON, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the Plaintiffs/Counterclaim Defendants' *Motion to Dismiss Counterclaims* (Document 47), the *Memorandum in Support of Motion to Dismiss Counterclaims* (Document 48), the Defendants/Counterclaim Plaintiffs David Chadwick Dillon and Dillon Industries, Inc.'s *Memorandum of Law in Response to Elgin's Motion to Dismiss Counterclaims* (Document 59), the Plaintiffs/Counterclaim Defendants' *Reply in Support of Motion to Dismiss Counterclaims* (Document 60), as well as *Defendant David Chadwick Dillon and Dillon Industries, Inc.'s Answer to First Amended Verified Complaint and Counterclaim* (Document 39). For the reasons stated herein, the Court finds that the motion to dismiss should be granted.

**FACTUAL ALLEGATIONS**

The Plaintiffs/Counterclaim Defendants are Elgin Separation Solutions, LLC, and CMS/CSI LLC, formerly known as Centrifugal Services, LLC (collectively, "Counterclaim Defendants" or "Elgin"). The Defendants/Counterclaim Plaintiffs are Dillon Industries, Inc., and

its owner Chad Dillon (collectively, the "Dillon Defendants").[1] Dillon is a former Elgin employee. He left employment with Elgin to form his company, Dillon Industries, Inc. Although not the sole focus of their work, Elgin and Dillon Industries are both in the business of repairing and manufacturing specialized processing equipment; specifically, decanter centrifuges.

Dillon incorporates by reference the allegations of Elgin's First Amended Verified Complaint, as well as the Dillon Defendants' Answer and affirmative defenses. To summarize, in 2013, Dillon sold his family business to Centrifugal Services, an Elgin subsidiary. At that time, the parties entered into two contracts: (1) an Asset Purchase and Contribution Agreement (the "APC Agreement") governing the sale of the business, and (2) an Employment Agreement governing Dillon's employment with Elgin. Following the sale, Dillon continued running the business as president of Elgin's Poca, West Virginia, division.

The Employment Agreement contained one-year non-competition and non-solicitation provisions.[2] It also contained a provision which would "toll" the one-year period during any period of noncompliance. In November 2021, Dillon decided to leave Elgin with the intention of starting his own competing business. Elgin asked him to stay until Elgin found a suitable replacement. Dillon agreed on the condition that the one-year non-competition and non-solicitation provisions would begin to run from the effective date of his resignation, December 14, 2021.[3] During this period, Dillon prepared to compete with Elgin. The parties dispute whether

---

[1] The third Defendant, Don Ritchie, has not brought a counterclaim in this matter.
[2] The parties disagree as to whether the Employment Agreement terminated following the expiration of its 24-month initial term in 2015, and whether the Agreement was ever assigned from Centrifugal Services to Elgin such that Elgin has a right to enforce the Agreement against Mr. Dillon. These issues of law have not yet been resolved and will not be addressed at this juncture.
[3] Elgin does not dispute that the one-year period began to run from this time but maintains that such agreement constituted an oral modification expressly prohibited by the Employment Agreement.

2

Dillon solicited Elgin employees or customers in violation of the Employment Agreement during this time, and whether the one-year period was effectively tolled.

Around October or December 2022, Elgin found a suitable replacement for Dillon, and Dillon left his employment with Elgin. On December 14, 2022, Dillon contends the one-year restrictive covenant period expired. Dillon Industries placed an ad for employment online the next day. Following Dillon's departure, he alleges customers and employees of Elgin "gravitated to [him] and became customers and employees of Dillon Industries." (Counterclaim at ¶14.) Dillon maintains that this "frustrated" Elgin, and that Elgin "accordingly sought ways to extend the One Year Period in violation of the parties' agreements, all in an effort to remove Dillon Industries as a competitor." (*Id.* at ¶15.) This includes a January 2023 call that Dillon claims he received from Elgin's CEO with a request to cease hiring former Elgin employees, as well as a March 2023 cease-and-desist letter that Elgin's counsel sent to Dillon demanding he cease competing with Elgin, soliciting Elgin employees, and using Elgin's confidential information. Dillon alleges that the "Plaintiffs' actions are in bad faith and violate their implied duty of good faith and fair dealing under the Employment Agreement and related agreements." (*Id.* at ¶19.) He claims he "bargained for and obtained the contractual right to compete with Elgin by, at the latest, December 15, 2022, and Elgin has breached the parties' agreements in this regard through its bad faith behavior." (*Id.*)

The Amended Verified Complaint asserted the following causes of action: Count I: Violation of the Defend Trade Secrets Act; Count II: Violation of the West Virginia Uniform Trade Secrets Act; Count III: Copyright Infringement (as to Mr. Dillon and Dillon Industries); Count IV: Breach of Contract – APC Agreement (as to Mr. Dillon); Count V: Breach of Contract –

Employment Agreement (as to Mr. Dillon); Count VI: Breach of Fiduciary Duty (as to Mr. Dillon); Count VII: Tortious Interference (as to Mr. Dillon); Count VIII: Breach of Fiduciary Duty (as to Mr. Ritchie); and Count IX: False Designation of Origin – Lanham Act.

The Counterclaim asserts two causes of action: (1) Breach of Contract (by David Chadwick Dillon against Centrifugal Services and Elgin); and (2) Misrepresentation and Tortious Interference (by Dillon Industries against Centrifugal Services and Elgin). Dillon seeks an order of judgment on his breach of contract claim, monetary damages in an amount to be determined by a jury, attorneys' fees and costs, and punitive damages.[4]

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*,

---

4 Inasmuch as Dillon Industries has represented that it intends to withdraw its counterclaim for Misrepresentation and Tortious Interference, the Court does not address it herein.

550 U.S. at 555. Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements." *Iqbal,* 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal*, 556 U.S. at 679. Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis*, 588 F.3d at 193 (quoting *Twombly*, 550 U.S. at 570). A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly*, 550 U.S. at 557). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be

a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## DISCUSSION

As a preliminary matter, the Court notes that Dillon Industries indicated in its response that it "will be moving to withdraw its second counterclaim (Misrepresentation and Tortious Interference) against Elgin" based on its understanding that the Court's *Memorandum Opinion and Order* denying Elgin's motion for injunctive relief (Document 55) "effectively moots" that claim. (Resp. at 1) (Document 59.) While Dillon Industries has yet to formally move to withdraw its counterclaim, the Court will treat the claim as moot and address only Dillon's counterclaim for breach of contract.

Elgin urges the Court to dismiss the breach of contract claim for three reasons. First, Elgin contends Dillon's counterclaim is procedurally barred by the litigation privilege because the wrongful conduct alleged therein is Elgin's filing of this lawsuit and request for preliminary injunctive relief, and the litigation privilege applies to breach of contract claims in West Virginia. Second, Elgin argues that the counterclaim fails to plausibly allege that Elgin engaged in any conduct which might constitute a breach of the Employment Agreement. Third, Elgin avers that Dillon's damages are speculative, and he, therefore, lacks Article III standing.

Dillon argues that the litigation privilege is limited to providing immunity for "a defamatory statement or other tortious behavior" by a party in litigation. (Resp. at 3) (citing *Clark v. Druckman*, 624 S.E.2d 864 (W. Va. 2005).) Because he only seeks damages "for the consequences of Elgin's breach" of the parties' agreement with respect to the one-year non-compete provision, Dillon asserts that the litigation privilege does not apply. (*Id.*) He maintains

6

that his claim for breach of contract is not based on Elgin's filing of the instant lawsuit. Rather, he emphasizes his allegation that "Elgin was frustrated because Dillon Industries was outcompeting Elgin and that Elgin 'sought ways to extend the One Year Period in violation of the parties' agreements, all in an effort to remove Dillon Industries as a competitor.'" (*Id.*) (quoting Counterclaim at ¶¶14–15.) He asserts his belief that "discovery will reveal that Elgin sought to breach the agreements it made [regarding the one-year non-compete period] *well before* Elgin ever commenced litigation." (*Id.*) (emphasis in original). Dillon appears to contend Elgin's pre-litigation conduct, carried out by outside counsel, is not covered by the litigation privilege.

Elgin replies that Dillon fails to address the precedent regarding application of the litigation privilege to breach of contract claims and argues that he "misconstrues the holding" in *Clark v. Druckman*. (Reply at 1) (Document 60.) It emphasizes that Dillon failed to cite authority in support of his argument that Elgin's pre-litigation conduct is not covered by the litigation privilege, in contrast to precedent. Further, Elgin contends Dillon failed to show the existence of an agreement between the parties regarding the modification of the one-year non-compete period. Specifically, Elgin notes that the Employment Agreement does not permit oral modifications, and Dillon does not assert that the parties' agreement or understanding regarding the commencement of the non-compete period was in writing. Elgin maintains that its reliance on the Employment Agreement's tolling provision does not constitute bad faith, and that Dillon fails to allege facts related to his damages for breach.

"Under the litigation privilege, any communication, oral or written, uttered or published in the due course of a judicial proceeding is . . . privileged and cannot constitute the basis of a civil

7

action." *Barefield v. DPIC Companies, Inc.*, 600 S.E.2d 256, 272 (W. Va. 2004) (Davis, J., concurring) (cleaned up). The purpose of the privilege includes:

> (1) promoting the candid, objective and undistorted disclosure of evidence; (2) placing the burden of testing the evidence upon the litigants during trial; (3) avoiding the chilling effect resulting from the threat of subsequent litigation; (4) reinforcing the finality of judgments; (5) limiting collateral attacks upon judgments; (6) promoting zealous advocacy; (7) discouraging abusive litigation practices; and (8) encouraging settlement.

*Id.* at 272 (internal citation omitted); *see also Smith v. Chestnut Ridge Storage, LLC*, 855 S.E.2d 332, 339 (W. Va. 2021) ("We have observed that, in general, absolute privilege attaches to a party in a judicial or quasi-judicial proceeding 'based upon the public interest of encouraging access to the court system while facilitating the truth-seeking process therein.'" (quoting *Collins vs. Red Roof Inns, Inc.*, 566 S.E.2d 595, 601 (W. Va. 2002))). Considering these principles, the West Virginia Supreme Court has held that the privilege applies to both communications and conduct transpiring during the litigation process.[5] *Clark v. Druckman*, 624 S.E.2d 864, 871 (W. Va. 2005). However, it does not apply to malicious prosecution and fraud. *Zappin v. Ramey*, No. 3:22-CV-00080, 2022 WL 19029807, at *22 (S.D.W. Va. Oct. 27, 2022), *report and recommendation adopted,* No. CV 3:22-0080, 2023 WL 1469995 (S.D.W. Va. Feb. 2, 2023), *aff'd,* No. 23-1767, 2024 WL 399098 (4th Cir. Feb. 2, 2024); *BriovaRx, LLC v. Johnson*, No. CV 3:13-12049, 2014 WL 12744704, at *2 (S.D.W. Va. July 2, 2014); *Clark*, 624 S.E.2d at 872.

The Court finds that the litigation privilege applies, and the counterclaim must be dismissed. The West Virginia Supreme Court of Appeals "has never found that the litigation

---

[5] Although in this case Elgin is asserting the privilege, it is commonly applied to protect lawyers from civil damages. *See* Syl. Pt. 3, *Clark v. Druckman*, 624 S.E.2d 864 (W. Va. 2005) ("The litigation privilege is generally applicable to bar a civil litigant's claim for civil damages against an opposing party's attorney if the alleged act of the attorney occurs in the course of the attorney's representation of an opposing party and is conduct related to the civil action.").

privilege does not apply to a breach of contract claim." *Smith*, 855 S.E.2d at 341 n.10 (collecting cases and noting that "[a] number of courts outside of [West Virginia] have determined that litigation privilege immunity applies in breach of contract claims"). In *Smith*, the West Virginia Supreme Court of Appeals rejected the counterclaim plaintiff's argument that the litigation privilege should not apply to slander of title and breach of contract claims where the counterclaim plaintiff conceded that its counterclaim was based solely on statements made by the counterclaim defendants during a quasi-judicial proceeding. *See id.* at 340. Here, Dillon argues that the litigation privilege does not apply because he "seeks damages for the consequences of Elgin's breach" of the parties' agreement with respect to the one-year noncompete provision. (Resp. at 3.) However, while he maintains that the alleged breach is not based on Elgin's filing of the instant lawsuit, the language of the counterclaim and his response belie his position. Indeed, Dillon alleges that Elgin breached or conspired to breach the Employment Agreement by "[seeking] ways to extend the One Year Period" following his departure. (Counterclaim at ¶15.) This appears to include Elgin's ultimate claim in the Amended Verified Complaint that the one-year period was "tolled" by Dillon's alleged noncompliance with the non-competition and non-solicitation provisions of the Agreement. (*See id.* at ¶¶16–18.) He appears to further allege in his response that Elgin's pre-litigation conduct, including searches of Dillon's work laptop and emails and sending cease-and-desist letters, is not covered by the litigation privilege. (*See* Resp. at 3–4.) This is exactly the type of conduct intended to be covered by the ligation privilege. *See Clark*, 624 S.E.2d at 871 ("Just as participants in litigation must be free to engage in unhindered communication, so too must those participants be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for

misconduct." (quoting *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A., v. U.S. Fire Ins. Co.*, 639 So.2d 606, 608 (Fla. 1994)); *see also Collins*, 566 S.E.2d 595, 603 (2002) (holding that, prior to filing a prospective judicial proceeding, a party is "absolutely privileged" to publish defamatory matter about a third person not party to the dispute when the prospective judicial proceeding is contemplated in good faith and under serious consideration; the defamatory statement is related to the prospective proceeding; and the defamatory matter is published only to persons with an interest in the prospective proceeding). The Court notes that some of the allegations presented as argument in Dillon's response memorandum are broader than those included in the Counterclaim. However, in analyzing the motion to dismiss, the Court is restricted to the allegations in the Counterclaim. Accordingly, because the only conduct alleged in the counterclaim arises directly from Elgin's investigation and initiation of the instant action, the litigation privilege applies, and the counterclaim must be dismissed.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the Plaintiffs/Counterclaim Defendants' *Motion to Dismiss Counterclaims* (Document 47) be **GRANTED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: March 22, 2024

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

10